[Civ. No. 15773. Second Dist., Div. Two. June 6, 1947.]

JAMES PSIHOZIOS, Respondent, v. ANNABEL C. HUMBERG, Appellant.

James C. Hollingsworth and Edward Henderson for Respondent.

Arthur H. Blanchard, William A. Reppy and Neil D. Heily for Appellant.

MOORE, P. J.—On November 1, 1941, respondent leased from Mrs. S. L. White, a resident of Maine, certain premises in the city of Santa Paula which he used for the conduct of a café and beer parlor. His lease was for 15 months at a rental of $42.50 a month. One of its covenants was that should the lessee continue his occupancy after the expiration of the term such holding over would be considered as a month to month tenancy. Also, it granted the lessee an option to purchase the property in event of a sale. After learning of the lessor's intention to sell the premises and while still a tenant, on September 26, 1944, respondent declared in writing his unwillingness to pay more than $6,500 for the property. On the first of the following month appellant acquired the property for the sum of $7,500. Respondent continued as her tenant and paid the same rental until he abandoned the place on July 1, 1945, having made certain repairs during early January. The controversy between him and appellant arose out of two events, as shown by the findings, which preceded respondent's removal from the restaurant. In December, 1944, appellant stated to respondent that "if he would remodel and renovate said premises . . . plaintiff could continue to remain in occupation and possession of said premises so long as he . . . continued to pay the rent for said premises

upon the same terms and conditions as he . . . had been paying rent to the former owner thereof.'' Respondent believed and relied upon such statement and had ''said premises remodeled and renovated at the sole cost and expense of plaintiff'' in the sum of approximately $400.

The court determined that appellant did not intend to perform or abide by her promise but that it was made ''with the intent and purpose on the part of the defendant to defraud and deceive the plaintiff so that the defendant would have said premises remodeled and renovated at the sole cost of plaintiff, and without plaintiff being permitted to remain in possession of said premises as stated by defendant to plaintiff.''

■ The only proof of a fraudulent design of appellant is such inference as may be drawn from the facts of her promise in December and the notice terminating respondent's tenancy in May. Nothing was said in either her promise in December or in her notice in May that indicated a desire to cheat or deceive her tenant. During the interim the parties continued on friendly relations until appellant was advised that respondent had participated in the filing of a complaint against her before the real estate board and that he had used profanity in reviling her. So slight is the evidence of a fraudulent purpose on the part of appellant that it does not comport with the rule that proof of fraud must be clear and convincing. Whatever the amount or degree of fraud that might have been committed by appellant it could apply to the issues of this case on but one of two theories, namely: (1) that the investment by respondent of the sum of $400 on account of a prospective lease of real property was part performance and established a lease notwithstanding no writing containing terms was executed by appellant; (2) that by reason of appellant's fraudulent statement on which respondent relied a lease of some sort was created granting the right of possession.

■ The first theory is a vain grasp for a right that is denied by the statute of frauds (Civ. Code, § 1624, subd. 4). Part performance of an oral contract by the payment of money on the purchase or lease of real property does not defeat the operation of the statute except as it may be applied for purposes of relief in equity. (*Dondero* v. *Aparicio,* 63 Cal.App. 373, 377 [218 P. 608].) Such a contract by reason of its part performance can be enforced only in equity. (*Davis* v. *Judson,* 159 Cal. 121, 131 [113 P. 147].) In an ordinary action at law one who proves an oral contract for a lease of

realty for a longer period than one year cannot recover. (*Dondero* v. *Aparicio, supra,* p. 377.) As to the second theory, it is elemental that if an oral promise in good faith cannot overcome the statute of frauds, surely a dishonest promise can have no greater force. Of course, it was not the conscious aim of respondent by his pleading or by his argument on the proof to urge that the promise of an extended term of occupancy created a new lease. His logic is that because he was deceived by appellant she is estopped to deny that respondent's tenancy was continued. Granting such to be true, yet neither the false promise nor any rational deduction therefrom could have effected a lease for a term of years. If he was entitled to continue his occupancy it was only as tenant at will.

The second occurrence found by the court as a cause for this action was in May, 1945. Appellant then served written notice upon respondent to quit the premises or pay a monthly rental of $200. Pursuant to such notice respondent vacated the café about July 1, 1945. By reason of his inability to find another location in Santa Paula he lost his business and the good will thereof, to his damage in the sum of $4,000. This sum was supplemented with the sum expended by him ''in renovating and remodeling the premises,'' making the total judgment $4,400 in favor of respondent on the theory that he was wrongfully evicted from the property.

By this appeal it is (1) contended that respondent's tenancy was from month to month, terminable upon 30 days' notice; (2) denied that there was any eviction either pleaded or proved, and (3) contended that respondent's outlay was for renovating only and that it was done solely for his own benefit.

 At the time of appellant's purchase of the property respondent held a tenancy at will or from month to month. This resulted from (1) his lease of 1941, whereby he paid his rentals monthly and (2) the automatic application of section 1945 of the Civil Code* which makes a renewal of ''hiring on the same terms and for the same time, not exceeding one month when the rent is payable monthly.'' While respondent was thus holding under a month to month tenancy

---

*''If a lessee of real property remains in possession thereof after the expiration of the hiring, and the lessor accepts rent from him, the parties are presumed to have renewed the hiring on the same terms and for the same time, not exceeding one month when the rent is payable monthly, nor in any case one year.''

the offer was made to him by appellant that if he would renovate and remodel the café he "could continue in occupation and possession so long as he continued to pay rent upon the same terms and conditions as he had been paying rent to the former owner." Respondent does not contend that such oral promise was the equivalent of a written lease for an indefinite period, but asserts that because it was fraudulently made appellant was estopped to deny her promise to him.

But conceding respondent's right to remain as long as he paid the rent upon the "same terms and conditions," he gained no more than a month to month tenancy. This is proved by the terms of the White lease which specifically provided that "if the lessee hold over the said term with the consent, express or implied of the lessor such holding shall be construed to be a tenancy only from month to month." It is established also by sections 1945 and 1946† of the Civil Code. Nowhere in respondent's brief is it contended that a perpetual estate of any kind was granted to him, not even a leasehold for life. Nor do the findings so declare. If he was to occupy the café on the "same terms and conditions" as formerly, surely such terms emphasized the month to month feature of the tenancy with the same force and clarity as that provision which obligated him to pay every month the sum of $42.50. If the rental was not increased neither was the term enlarged by the promise of appellant. If her language may be construed as creating a lease it was for an indefinite term with monthly rentals reserved. If it was for an indefinite term it was a tenancy from month to month. (*Palmer* v. *Zeis,* 65 Cal.App.2d Supp. 859, 861 [151 P.2d 323; 35 C.J. 1106.) At the time of appellant's December promise respondent gained no impression that he was to become a permanent tenant. He testified that he "expected to stay a couple of years," while she denied having made any promise at all. Moreover, the court made no finding that a tenancy of any

---

†"A hiring of real property, for a term not specified by the parties, is deemed to be renewed as stated in the last section, at the end of the term implied by law unless one of the parties gives notice to the other of his intention to terminate the same, at least as long before the expiration thereof as the term of the hiring itself, not exceeding one month; provided, however, that as to tenancies for a period of a month or longer either of the parties may terminate the same by giving one month's notice thereof at any time and then rent shall be due and payable to and including the date of termination. It shall be competent for the parties to provide by an agreement at the time such tenancy is created that a notice of the intention to terminate the same may be given at any time not less than seven days before the expiration of the term thereof."

term was created by the promise of appellant but found that after the expiration of the White lease, January 1, 1943, respondent "was renting said real property from month to month" until appellant became owner and "thereafter until on or about the first day of July, 1945, plaintiff paid said rent to defendant as owner of the premises." In neither the findings nor the evidence is there basis for a tenancy other than one at will or from month to month. The law forbids any other conclusion.

Where a person enters into a property without a definite term and monthly rentals are accepted, or where he gains possession under a void parol lease, "the tenancy is either at will or from month to month or from year to year according to the circumstances." (*Phelan* v. *Anderson*, 118 Cal. 504, 506 [50 P. 685]; *Linnard* v. *Sonnenschein*, 94 Cal. App. 729, 735 [272 P. 315].)

As a month to month tenant respondent's right to occupy the café was terminable by either party "by giving one month's notice thereof at any time." (Civ. Code, § 1946.) Such notice having been served upon respondent about May 23, 1945, his tenancy was terminated as of June 30th. He accepted the logic and effect of the notice, and without awaiting court action to invoke a decree for his ouster he abandoned the café on July 1, 1945, and instituted this action the following August 17, to recover damages for wrongful eviction. Such facts do not constitute eviction, lawful or unlawful. Respondent had no right to remain after June 30, 1945, the expiration date of the notice, except upon terms prescribed by appellant. But respondent was not evicted *vi et armis* or by judicial process. He voluntarily vacated the premises. The mere service of a notice upon his tenant by the landlord to terminate a tenancy at will may serve either of two purposes: (1) it may lay the foundation for an action at law to recover the tenement or (2) it may serve merely to advise the tenant that his term will expire at the end of 30 days. If he accepts the notice as severing the relationship he may remove his effects from the premises and be no further bound for rentals. That is exactly what respondent did. Having removed voluntarily from the premises he was without a cause for action against appellant. The beneficial enjoyment of a property by one holding under a lease is not disturbed by a suit to oust him; and so long as the landlord acts in good faith in suing to obtain a decree of ouster because of the tenant's alleged violation of some covenant of his lease

he is not liable to the tenant in damages. (*Black* v. *Knight,* 176 Cal. 722, 728 [169 P. 382, L.R.A. 1918C 319] ; *Schubert* v. *Bates,* *(Cal.App.) 173 P.2d 697.)

In *Black* v. *Knight* the landlord obtained judgment against his tenant for unlawful detainer. The latter left the premises without asking for a stay, and prior to the issuance of execution and in an action for damages for unlawful eviction alleged that by the judgment for unlawful detainer he was required to and did surrender possession. The court held that until the landlord enforces an erroneous judgment he does not actually disturb the possession. Certainly, then, the mere notice to a tenant at will that his term will end in 30 days is not an eviction. He is not forced or obliged thereby to yield possession, and if he does abandon the premises the landlord is not liable for the tenant's failure to enjoy the remainder of his term. Thus in the case at bar respondent without compulsion or threat of any kind retired from the scene and permitted appellant to occupy the café. If he had opined that his claim to continued possession was lawful, surely he would have remained on the property and awaited the outcome of litigation. All the facts he knew at the trial were known in June, 1945, and all the law that is available to him now was in force and effect in July when he left the café, and if it supported his position then he could have secured his right to a continuing tenancy as well as a money judgment for damages. If he was not entitled to the former he has no right to the latter.

Respondent argues as a basis for justifying his abandonment of the property that because of his fright at receiving the notice from the constable he was warranted in quitting the premises. He is sure that ''the justice of his claim will not be defeated because he acceded to to the express demand of appellant.'' In support of his argument he cites *Miller* v. *Nathan,* 87 Cal.App. 185 [261 P. 1047]. It is not applicable. It dealt with a valid lease for five years. The landlord prosecuted a terrorizing campaign to oust his tenant without having to resort to the courts. The notice began with a scarehead: It advised the tenant that if he did not vacate promptly, action for ouster would follow immediately; that possession should be delivered to his agent who was justice of the peace and United States commissioner. It was accompanied by a letter from the agent containing a list of his offices, stating

*A hearing was granted by the Supreme Court on December 23, 1946.

that the reason for his demand was that the lease had been breached by failure to pay the October rent. Within a few days after service of the notice the agent urged Miller to vacate to avoid litigation, and within a week defendant filed a suit before the same justice of the peace for rentals not due and attached movables on the leased premises. In the instant case, while the notice was delivered by the constable it advised respondent that if he did not quit, his monthly rental would be $200. In view of his net income of $500 monthly from the café he could comfortably have remained for a while at the advanced rental to take his bearings and determine upon his legal procedure. Having voluntarily retired from the contest before it was begun, respondent is now a judgment creditor without a valid basis for his award. While it would be interesting to inquire into the constituent elements of the amount adjudged to be due him as general damage, in view of the conclusion derived that he is not entitled to such recovery further discussion thereof would be useless.

■ However, the same is not true to the $400 which respondent claimed and the court found to have been expended by him in renovating and remodeling appellant's café in the belief that he would occupy it for many months. If such investment primarily benefited the real property respondent should be repaid such sum less the value to him of the use of the improvements and repairs during the six months preceding his removal. There is no evidence in the record whereby such value could be determined by the reviewing court.

It is therefore ordered that the judgment be and it is reversed with instructions to ascertain the value of the use to respondent of the improvements made by him and to award him not to exceed $400 less the sum of such value. Appellant to recover costs on appeal.

McComb, J., and Wilson, J., concurred.